**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**KIYOKO RUBIO**                                    **CIVIL ACTION**

**VERSUS**                                          **NO. 16-13908**

**C.R. CONTRACTORS, LLC, ET AL.**                   **SECTION "B"(5)**

<u>**ORDER AND REASONS**</u>

Before the Court is Plaintiffs' "Motion for Attorneys' Fees." Rec. Doc. 19. Defendants timely filed an opposition memorandum. Rec. Doc. 21. Plaintiffs then requested, and were granted, leave to file a reply memorandum. Rec. Doc. 24. For the reasons enumerated below,

**IT IS ORDERED** that Plaintiffs' motion (Rec. Doc. 19) is **GRANTED IN PART**.

I.  <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

This case arises out of alleged violations of the Fair Labor Standards Act ("FLSA"). Specifically, Plaintiff Kiyoko Rubio ("Rubio") alleged that she was not properly paid overtime wages while working for Defendants C.R. Contractors, SGS, LLC, and Maritza Romero. Rec. Doc. 1 at ¶ 1. Accordingly, she filed a complaint on August 17, 2016 on behalf of herself and similarly situated employees. *Id.* at ¶ 2. When Defendant SGS, LLC failed to respond to the complaint and no entry of default was sought, the Court ordered Plaintiffs to show cause why SGS, LLC should not be dismissed. Rec. Doc. 11. Plaintiffs did not respond to the show

cause order and SGS, LLC was consequently terminated as a party on November 1, 2016.

On January 17, 2017, Petra Oloarte opted-in to the suit. Rec. Doc. 13.

On May 3, 2017, the Court was informed that the parties had reached a settlement agreement and accordingly entered an order of dismissal. Rec. Doc. 16. Thereafter, the parties filed an *ex parte*/consent motion to approve the FLSA settlement. Rec. Doc. 17. Pursuant to the agreement reached by the parties, Rubio was to receive $500.00, while Oloarte was to receive $1,000.00. Rec. Doc. 17-1 at ¶ 6. These amounts were reached by multiplying the regular hourly rate by time-and-a-half for all overtime worked. *Id.* at ¶ 7. The number was then doubled to account for liquidated damages and Rubio received an additional amount as an incentive for bringing the action. *Id.* However, the parties informed the Court that they could not agree on the appropriate amount of attorneys' fees. *Id.* at ¶ 9. Accordingly, on June 20, 2017, this Court approved of the settlement and specifically noted Plaintiffs' right to seek attorneys' fees. Rec. Doc. 18.

## II. THE PARTIES' CONTENTIONS

Plaintiffs' counsel asks this Court to award $11,300.00 for 44.9 hours of work, billed at the rate of $250 per hour for lead attorneys William Beaumont and Roberto Costales and $200 per hour for Emily Westermeier. Rec. Doc. 19-1 at 8-9, 11. They argue that

2

Beaumont and Costales have practiced law for six years, participated in several FLSA collective actions, and been awarded $250 per hour by this Court in a separate FLSA collective action case. *Id.* at 8-9 (citing *Joel Banegas v. Calmar Corporation, et al.*, Civil Action No. 15-593, Section "B", Rec. Doc. 69 at 3).[1] They also argue that Westermeir has been practicing law since 2014 and previously clerked for the Honorable Marvin E. Aspen in the Northern District of Illinois. Rec. Doc. 19-1 at 9-10. Plaintiffs fail to argue the basis for billing 44.9 hours of work in their memorandum, which instead states that "the Court should award fees for the full xxx hours sought by this application (which has already been reduced 16.5% . . . for hours that were arguably unproductive, excessive, or redundant[)]." *Id.* at 10. Nonetheless, Plaintiffs' counsel attached their billing records to the instant motion. Rec. Doc. 19-2.

Defendants respond that the Court should award only $3,000 in attorneys' fees, double the amount recovered by Plaintiffs pursuant to the settlement agreement. Rec. Doc. 21 at 3. They argue that they admitted to unknowingly failing to properly pay overtime as soon as this case was filed and accordingly "offered to pay its employees/former employees the overtime they were owed." *Id.* at 1. They suggest that "the only '*material*' work that had to

---

[1] This Court previously noted that $250 per hour was a reasonable fee for FLSA work in the New Orleans area, based on experience with hourly rates in this district and applicable case law. Rec. Doc. 69 at 3 (citation omitted).

be performed by Plaintiffs' counsel was to review the payroll records to ensure that such records corroborated Defendants' contention that it customarily paid overtime." *Id.* at 5. They further note that Plaintiff failed to respond to discovery requests and did not take a single deposition; instead, Plaintiffs' counsel filed a "boilerplate/template" complaint, issued "boilerplate/template" discovery, filed a "boilerplate/template" motion for attorneys' fees, and performed "numerous hours of phone calls, emails, document review and other miniscule actions that increased the billable hours." *Id.* at 2. After examining Plaintiffs' counsel's billing records, Defendants determined that (1) 32.87% of the hours were billed after the case settled; (2) 25.05% of the hours were billed in connection with filing the instant motion for attorneys' fees; (3) 12.92% of the hours were billed for phone calls and/or emails; and (4) 37.86% of the hours were billed for legal research and/or drafting legal documents, even though Plaintiffs did not file any substantive motions and this case did not present any novel or difficult issues. *Id.* at 5.

### III. LAW AND ANALYSIS

The FLSA provides that the court shall, "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fees to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Although the provision does not specifically mention a 'prevailing party,' the courts have

4

construed the provision as requiring the party being awarded attorney's fees to be the prevailing party, similar to other fee-shifting jurisprudence." *Champion v. ADT Sec. Servs., Inc.*, No. 08-417, 2010 WL 4736908, at *1 (E.D. Tex. Nov. 16, 2010) (citing *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 n.7 (5th Cir. 2006)). The parties do not dispute the fact that Plaintiffs prevailed in this case.

The Fifth Circuit uses the lodestar method for determining a reasonable amount of attorneys' fees. *Saizan*, 448 F.3d at 799 (footnotes and citations omitted). Under that method, the reasonable number of hours spent on the case is multiplied by an appropriate hourly rate in the community for such work. *Id*.

The party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The court should eliminate those hours that are excessive, duplicative, or too vague to permit meaningful review. *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 (E.D. La. 2009) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *La. Power & Light Co.*, 50 F.3d at 326). Also, "[w]hen using the lodestar method to award attorney fees, courts routinely deduct time spent on unsuccessful, unfounded or unnecessary pleadings, motions, discovery requests and memoranda." *White v.*

5

*Imperial Adjustment Corp.*, No. 99-3804, 2005 WL 1578810, at *11 (E.D. La. June 28, 2005).

Further, attorneys should not bill at that same rate for the performance of clerical duties. Even if attorneys are required to complete certain clerical tasks due to a lack of available help, such non-legal work does not justify billing at an attorney's rate just because it is completed by an attorney. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) (noting that "[i]t is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.").[2]

The resulting lodestar amount is presumed reasonable, but the court may decrease or enhance the amount based on the twelve

---

[2] Courts in this circuit also use percentage-based reductions if the attorney failed to exercise billing judgment. *See Fralick v. Plumbers and Pipefitters Nat'l Pension Fund*, No. 09-0752, 2011 WL 487754, at *3-4 (N.D. Tex. Feb. 11, 2011) (reducing attorney's fees under the lodestar method in an ERISA case). To show billing judgment, a party must adequately document "the hours charged and [those] written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799. Here, Plaintiffs at least made some effort to exercise billing judgment, reducing various hours as duplicative or attributable to paralegal time. Rec. Doc. 19-2. Defendants do not argue that a percentage-based reduction is necessary on this basis and the Court does not find it necessary in light of Plaintiffs' counsel's efforts.

factors outlined in *Johnson*, 488 F.2d at 717. *Saizan*, 448 F.3d at 800.[3]

The Court agrees with Plaintiffs that $250 and $200 per hour are reasonable rates for FLSA work in the New Orleans community. *See, e.g., Big Lots*, 639 F. Supp. 2d at 701-02 (finding $300 per hour for partners and $225 per hour for associates reasonable for an FLSA claim in the New Orleans community). Plus, Defendants do not object to Plaintiffs' counsel's proposed rates.

However, cause exists to reduce the number of hours claimed by Plaintiffs' counsel to what is reasonable in this case. Many of the hours claimed are excessive. For example, Plaintiffs' counsel repeatedly billed 0.1 hours for both sending and receiving email correspondence or for time spent reading one-page Court orders or motions. Other examples of excessive hours are the number of hours spent on researching simple legal questions, irrelevant legal issues, and an inordinate number of hours spent in meetings or discussions between counsel, as well as with clients or potential clients. Accordingly, and for good cause, the total number of

---

[3] The twelve *Johnson* factors are: "(1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Saizan*, 448 F.3d at 800 n.18.

hours should be reduced by 12.9.[4] The total number of hours reasonably worked therefore amounts to 32: 9 hours by Roberto Costales, 4.5 by William Beaumont, and 18.5 by Emily Westermeier. *See also* Rec. Doc. 19-3 at ¶¶ 31-34. That equates to lodestar amounts of $2,250.00 for Costales, $1,125.00 for Beaumont, and $3,700.00 for Westermeier, or a total lodestar amount of $7,075.00.

Plaintiffs do not offer arguments regarding any of the *Johnson* factors. Rec. Doc. 19-1 at 11. However, Defendants argue that the eighth factor, regarding the amount involved and the results obtained, warrants a reduction of the lodestar amount. Rec. Doc. 21 at 4. Essentially, they argue that because the case settled for

---

[4] The following are examples of some excessive hours: 6/23/16 (research on a simple issue that did not lead to a motion or other action reduced by 1 hour); 6/24/16 (follow-up on simple research noted on 6/23/16 reduced by 0.2 hours); 7/7/16 (meeting with Beaumont to discuss the case reduced by 0.2 hours); 8/18/16 and 8/19/16 (reading emails and the summons reduced by 0.1 hours); 9/13/16 (reading Defendants' motion and the Court's Order regarding an extension of time to file reduced by 0.1 hours); 10/10/16 (reading and sending emails to defense counsel reduced by 0.2 hours); 10/14/16 (reading Defendants' email and calling defense counsel reduced by 0.1 hours); 11/3/16 (reading Court email and conducting conference with the Court reduced by 0.1 hours); 12/8/16 (researching an offer of judgment reduced by 0.5 hours); 12/9/16 (meeting reduced by 0.1 hours); 1/17/17 (reading and sending emails reduced by 0.1 hours); 2/3/17 (reviewing files reduced by 0.3 hours); 2/22/17 (reading a protective order reduced by 0.4 hours); 2/23/17 (firm meeting reduced by 0.1 hours); 3/2/17 (drafting, sending, and reviewing a letter to Defendants reduced by 0.2 hours); 3/14/17 (sending and reading emails reduced by 0.1 hours); 3/21/17 (emailing and calling defense counsel reduced by 0.1 hours); 3/30/17 and 4/10/17 (sending and reading emails from defense counsel reduced by 0.2 hours); 4/10/17 (continued review reduced by 0.3 hours); 4/13/17 and 4/14/17 (leaving a voicemail for defense counsel and subsequently talking to defense counsel reduced by 0.1 hours); 4/19/17 (revising and sending email to defense counsel reduced by 0.1 hours); 4/27/17 and 4/28/17 (reading emails from defense counsel reduced by 0.2 hours); 4/28/17 (research reduced by 0.3 hours); 5/3/17 (drafting and emailing notice of settlement and reading Court's order of dismissal reduced by 0.2 hours); 5/11/17, 5/16/17, and 5/18/17 (reading emails reduced by 0.2 hours); 5/18/17 (research reduced by 0.5 hours); 6/1/17 and 6/21/17 (sending email and reading Court order reduced by 0.1 hours); 6/30/17 (preparing motion for attorneys' fees reduced by 2.0 hours).

8

a total of $1,500.00 (amounting to twice the amount owed in overtime plus an amount given to the original Plaintiff as an incentive to bring similar claims) and approximately one-third of the hours were billed after the case settled, Plaintiffs' attorneys' fees should be capped at $3,000.00. *Id.* at 4-5.

"That the attorneys' fees exceed the awards to the plaintiffs does not make them *per se* unreasonable." *Johnson*, 639 F. Supp. 2d at 706 (noting that both the Supreme Court and the Fifth Circuit have rejected a "proportionality" rule between the damages awarded and the amount of attorneys' fees) (citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986); *Saizan*, 448 F.3d at 802). "[W]hile a low damages award is one fact which a district court may consider in setting the amount of attorney's fees, this factor alone should not lead the district court to reduce a fee award." *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000) (citation omitted).

The Court has already reduced the lodestar amount by eliminating hours deemed excessive. The fact that Plaintiffs recovered only $1,500.00, alone, does not warrant adjusting the lodestar amount under the eighth *Johnson* factor. *See, e.g., Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990)

(affirming an award of $9,250.00 in fees where the plaintiffs recovered only $1,181.00).[5]

IV. **CONCLUSION**

For the reasons outlined above,

**IT IS ORDERED** that Plaintiff's motion (Rec. Doc. 19) is **GRANTED IN PART**. Plaintiff is awarded $7,075.00 in attorneys' fees plus court costs.

New Orleans, Louisiana, this 16th day of August, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] Significantly, Defendants cited to only one example in which a court purportedly reduced the fee award because it was so disproportionate to the damages award. Rec. Doc. 21 at 4 (citing *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991)). In that case, though, the district court entered a judgment after trial for damages in the amount of $5,608.55, this amount was thereafter reduced to $1,000.00 on appeal, the plaintiffs originally requested $300,000.00, the fee award was discretionary in the civil rights case, and counsel requested approximately $50,000.00 in fees. Unlike the plaintiff in that case, Plaintiffs here did not fail "entirely, or largely, in everything" and did not make unwarranted allegations in their complaint. Plus, the fees in this case do not amount to fifty times the damages award.